Robert WILLIAMS, Appellant–
Defendant,

v.

STATE of Indiana, Appellee–Plaintiff.

No. 49A05–0612–CR–688.

Court of Appeals of Indiana.

Sept. 11, 2007.

Ann M. Sutton, Marion County Public Defender Agency, Indianapolis, IN, Attorney for Appellant.

Steve Carter, Attorney General of Indiana, Matthew D. Fisher, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

BAKER, Chief Judge.

Appellant-defendant Robert Williams appeals his conviction for Residential En-

try,[1] a class D felony. Williams presents us with a novel issue, claiming that his conviction must be set aside because the State failed to establish that Williams "entered" the victim's residence within the meaning of the statute because the evidence showed that he only partially leaned into the victim's residence through a window that he had broken. The State cross-appeals, claiming that this appeal should be dismissed because Williams failed to show that the failure to file a timely notice of appeal was through no fault of his own and that he was diligent in pursing his right to appeal.

While we conclude that the trial court properly granted Williams's motion to file a belated notice of appeal, we also find that the evidence is sufficient to support the conviction. Thus, we affirm the judgment of the trial court.

### FACTS

Sometime during the evening on May 31, 2006, Williams went to Brown's house in Indianapolis. Although Brown and Williams were romantically involved, Brown told Williams to leave because Williams was intoxicated. Williams became belligerent and told Brown that he was going to "beat [her] bloody[.]" Tr. p. 39. As a result, Brown called the police, but Williams fled the scene before the officers arrived.

Approximately one hour later, Williams returned and knocked on Brown's door. When Brown refused to allow Williams inside, he walked around the outside of the residence and broke a bedroom window. Brown saw the "top part of Williams's body come through her window and blinds." *Id.* at 44. Brown called the police, and shortly thereafter, an officer arrived at the scene and saw Williams, covered in blood, standing in the front yard.

As a result of the incident, Williams was charged with residential entry and several other offenses. The State also alleged that Williams was a habitual offender. Following a jury trial on August 24, 2006, Williams was found guilty of residential entry. Williams also admitted to being a habitual offender. On that same day, the trial court sentenced Williams to three years of incarceration, which was enhanced by 910 days on the habitual offender count. After the trial court asked if he desired to appeal, Williams responded "no sir." *Id.* at 141.

However, on September 15, 2006, Williams sent a letter to the trial court requesting the appointment of appellate counsel. After receiving the letter, the trial court determined that Williams was indigent and appointed the Marion County Public Defender Agency (County Public Defender) that day to represent Williams on appeal. Thereafter, on October 24, 2006—after the time period for filing the notice of appeal had expired[2]—the court reporter contacted the County Public Defender and inquired as to whether that office would be filing a notice of appeal on Williams's behalf. In response, counsel stated that her office had not received an order of appointment of counsel from the trial court. Thus, the County Public Defender had no knowledge of the appeal.

On October 27, 2006, the County Public Defender filed a motion for leave to file a belated notice of appeal. The motion referred to the letter that Williams had written to the trial court requesting the ap-

---

1. Ind.Code § 35–43–2–1.5.

2. Indiana Appellate Rule 9(A) provides that "A party initiates an appeal by filing a Notice of Appeal with the trial court clerk *within thirty (30) days after the entry of a Final Judgment.*" (Emphasis added).

pointment of counsel and the fact that the trial court had appointed pauper counsel for Williams. The motion also noted that the County Public Defender had not received notice of that appointment or of Williams's desire to appeal until counsel was contacted by the court reporter. On October 31, 2006, the trial court granted Williams's motion for leave to file a belated notice of appeal. Williams now appeals his conviction for residential entry, and the State cross-appeals the trial court's grant of Williams's motion for leave to file the belated notice of appeal.

## DISCUSSION AND DECISION

### I. Cross–Appeal

■ We first address the State's cross-appeal, where it contends that the appeal must be dismissed. Specifically, the State argues that dismissal is warranted because "Williams did not present any evidence to support his claims; therefore, by definition, he cannot have met his burden to prove by a preponderance of the evidence that he is entitled to this relief." Appellee's Br. p. 4.

Pursuant to Post–Conviction Rule 2, a petition for permission to file a belated notice of appeal may be filed with the trial court where:

(a) the failure to file a timely notice of appeal was not due to the fault of the defendant; and

(b) the defendant has been diligent in requesting permission to file a belated notice of appeal under this rule.

The rule also requires that the trial court consider these two factors in deciding whether to grant or deny a petition for permission to file a belated appeal and that the trial court should permit the filing of a

belated notice of appeal where the trial court finds these grounds. P–C.R. 2.

■ In construing this rule, this court has determined that the defendant must prove both of the above requirements by a preponderance of the evidence. *Beatty v. State*, 854 N.E.2d 406, 409 (Ind.Ct.App. 2006). Whether to grant or deny a motion for permission to file a belated notice of appeal is a matter entrusted to the sound discretion of the trial court and the trial court's decision will be reversed only for an abuse of discretion or where the decision is contrary to law. *Id.* When the trial court does not hold a hearing on the petition, the only bases for the decision are the allegations set forth in the petition, and this court will review the decision de novo without according the trial court's findings any deference. *Hull v. State*, 839 N.E.2d 1250, 1253 (Ind.Ct.App.2005).

In this case, although Williams initially indicated that he did not wish to appeal his conviction, he sent a letter to the trial court on September 15, 2006, requesting the appointment of appellate counsel. Chronological Case Summary (CCS).[3] After reviewing the correspondence, the trial court determined that Williams was indigent and appointed the County Public Defender that same day to represent Williams on appeal. *Id.*

As noted above, the court reporter contacted counsel in the County Public Defender's office on October 24, 2006, which was after the time period for filing the notice of appeal had expired. Appellant's App. p. 49. In response to the court clerk's inquiry as to whether a notice of appeal would be filed in Williams's case, counsel responded that her office had not received the trial court's order of the appointment of counsel. Thus, her office had no knowledge of the case. *Id.*

---

**3.** The pages of the Chronological Case Summary are not numbered.

Under these circumstances, the record supports the trial court's determination that Williams was not at fault for failing to file the notice of appeal in a timely fashion. Moreover, because Williams requested the appointment of appellate counsel in a timely manner—which the trial court immediately granted—we further find that Williams was diligent in requesting permission to file the belated notice of appeal. Thus, we deny the State's request that this appeal be dismissed.

### II. Williams's Claims

Proceeding to the merits of the appeal, Williams claims that his conviction must be reversed because the evidence at trial established that only the upper portion of his body was through Brown's window after he broke it. Appellant's Br. p. 7. He further contends that the residential entry statute requires that an individual's entire body must enter the structure to support a conviction for that offense.

### A. Standard of Review

When reviewing a challenge to the sufficiency of the evidence, we do not reweigh the evidence or judge the credibility of the witnesses. *Jordan v. State,* 656 N.E.2d 816, 817 (Ind.1995). We look to the evidence and the reasonable inferences therefrom that support the verdict. *Id.* The conviction will be affirmed if evidence of probative value exists from which the fact finder could find the defendant guilty beyond a reasonable doubt. We typically will not invade the province of the jury as the sole judge of the credibility of a witness. *Pritchard v. State,* 248 Ind. 566, 230 N.E.2d 416, 418 (1967). We will affirm unless "no rational fact finder" could have found the defendant guilty beyond a reasonable doubt. *Clark v. State,* 728 N.E.2d 880, 887 (Ind.Ct.App.2000). To convict Williams of residential entry, the State was required to establish that he "knowingly or intentionally br[oke] and enter[ed]

the dwelling of another person[.]" I.C. § 35–43–2–1.5.

### B. "Entering" a Dwelling

We note that our courts have not had the occasion to determine whether an individual's "partial entry" into a residence will support a conviction for residential entry. In support of his claim, Williams seeks to distinguish the elements of this offense from the crime of burglary. Specifically, he directs us to the rule articulated in *Penman v. State,* 163 Ind.App. 583, 585, 325 N.E.2d 478, 480 (1975), where it was observed that

The crux of Penman's argument is that a person cannot be said to have "entered" a building until his entire person is within the boundaries of the structure. We do not agree with this statement of the law. A more accurate statement is that a person has entered a structure when he has essentially put himself in a position to commit a felony within the confines of the structure. While it is not sufficient to show that a defendant has placed a foot partially inside a door ... or inserted an iron bar between the jam [sic] and the door, ... a showing that defendant has leaned through a window to enable him to take money from a jukebox is sufficient to establish the element of entry.

In addition, Williams asserts that the plain meaning of the word "enter" should be adopted for purposes of the residential entry statute, and he directs us to the dictionary meaning of "to enter" as "to go or come into." http://mw1.merriamwebster.com/dictionary/enter *Merriam–Webster's Online Dictionary* (last visited August 23, 2007). In light of these pronouncements, Williams argues that the residential entry statute should require a complete entry into the structure, because that statute—unlike the burglary statute—does not require an intention to commit a felony

therein. Appellant's Br. p. 8. Therefore, Williams seemingly argues that the offense of residential entry should require a greater intrusion into the structure because the intent to commit a felony requirement is lacking under that statute.

■ Because our courts have not previously considered the argument that Williams advances today, prior constructions of similar statutes by our courts must be given great weight, and persuasive authority from other jurisdictions may also be considered.[4] *In re Nomination of Parker,* 580 N.E.2d 1006, 1008 (Ind.Ct.App. 1991).

■ In essence, the rule that any breach of the threshold, however slight, by any part of the body constitutes an entry appears to be followed in every jurisdiction that has construed its burglary statute along these lines. *See People v. Davis,* 18 Cal.4th 712, 76 Cal.Rptr.2d 770, 958 P.2d 1083, 1085 (1998) (recognizing that the least entry with the whole or any part of the body, hand, or foot, or with any instrument or weapon, introduced for the purpose of committing a felony, is sufficient to complete the offense); *see also State v. Ervin,* 223 Kan. 201, 573 P.2d 600, 601 (1977) (same). And long ago, it was written that

> As for the entry, any the least degree of it, with any part of the body, or with an instrument held in the hand, is sufficient; as to step over the threshold, to put a hand or a hook in at a window to draw out good, or a pistol to demand one's money, are all of them burglarious entries.

William Blackstone, 4 Commentaries 227.

■ With regard to Williams's contentions, we note that the offense of residential entry does not require intent to commit a felony in the structure. I.C. § 35–43–2–1.5. Indeed, we have previously held that the "only difference between residential entry and residential burglary is the element of intent to commit a felony therein." *Vincent v. State,* 639 N.E.2d 315, 317 (Ind.Ct.App.1994).

We note that the dictionary definition of "enter" provided by Williams does not require or imply that an entry must be total. Indeed, Williams's proposed rule of complete entry would lead to the absurd result that an individual could avoid prosecution for residential entry by simply ensuring that a foot or hand remained outside the threshold of the residence. Such a rule is untenable.

It is axiomatic that entering a home violates the occupant's possessory interest in the building and presents the possibility of a situation that may be dangerous to personal safety. Just as the offense of burglary is designed to deter activity leading to such situations, so does the crime of residential entry. Put another way, a *partial* entry into a home creates the same situation that the crime of residential entry is designed to deter in the same manner as a complete entry. Therefore, partial entry falls within the scope of residential entry. Thus, we conclude that the State produced sufficient evidence to sustain Williams's conviction.

The judgment of the trial court is affirmed.

BAILEY, J., and VAIDIK, concur.

---

4. The parties are unaware—as are we—of any other state that has a crime analogous to the offense of residential entry in Indiana.